UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
SHAMEKA GARDNER, on behalf of herself and as legal guardian of her infant children, L.A. and T.G.; SHARON HART; and ALEXANDER RHODES

                              Plaintiffs,

               -against-

THE CITY OF NEW YORK; DET. JOSEPH CORDOVA, (Shield No. 4396); P.O. ANTHONY GONZALEZ (Shield No. 23850); DET. RICHARD HEFNER (Shield No. 4469); DET. DAVID ISAKSEN, (Shield No. 620); P.O. ANDREW KAMNA (Shield No. 24865); SGT. THOMAS LENT (Shield No. 1792); LT. RICHARD LOBASSO; DET. RALPH LOGAN, (Shield No. 5664); DET. CHRISTOPHER MCNERNEY, (Shield No. 4080); P.O. JUANEZ NUNEZ (Shield No. 4680); DET. MATTHEW SCHMUCKER, (Shield No. 5022); and DET. ERIC SHANLEY, (Shield No. 1389), the individual defendants sued individually and in their official capacities,

                              Defendants.
------------------------------------------------------------------------X

**SECOND AMENDED COMPLAINT**

JURY TRIAL DEMANDED

15-CV-01334 (FB) (RLM)

    Plaintiffs Shameka Gardner and her infant children, L.A. and T.G., Sharon Hart, and Alexander Rhodes, by their attorney, Steven E. Lynch, allege for their complaint against the defendants as follows:

### PRELIMINARY STATEMENT

1.    Plaintiffs bring this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights guaranteed by the Constitution of the Unites States.

### JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

5. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. The plaintiffs are African-American females and an African-American male and were at all relevant times citizens of the City and State of New York.

7. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9. At all times hereinafter mentioned, the individually named defendants: DET. JOSEPH CORDOVA, (Shield No. 4396); P.O. ANTHONY GONZALEZ (Shield No. 23850); DET. RICHARD HEFNER (Shield No. 4469); DET. DAVID ISAKSEN, (Shield No. 620); P.O.

ANDREW KAMNA (Shield No. 24865); SGT. THOMAS LENT (Shield No. 1792); LT. RICHARD LOBASSO; DET. RALPH LOGAN, (Shield No. 5664); DET. CHRISTOPHER MCNERNEY, (Shield No. 4080); P.O. JUANEZ NUNEZ (Shield No. 4680); DET. MATTHEW SCHMUCKER, (Shield No. 5022); and DET. ERIC SHANLEY, (Shield No. 1389); were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13. On or about July 30, 2012, at approximately 7:15 p.m., plaintiff Shameka Gardner observed from inside her home at 580 Thomas S. Boyland Street police officers entering 578 Thomas S. Boyland Street in Brooklyn, New York.

14. A police officer looked at Ms. Gardner and said "there goes one right there."

15. The defendants entered Ms. Gardner's home after kicking down her front door. Plaintiff Gardner heard an officer scream "get on the fucking floor."

16. Plaintiff Shameka Gardner and her infant children, L.A. and T.G., resided at 580 Thomas S. Boyland Street at the time of the incident.

17. The defendants kicked, pulled her hair, and detained Plaintiff Gardner.

18. The defendants kicked and detained Plaintiff Gardner's daughter T.G. and detained Plaintiff Gardner's minor son L.A.

19. Plaintiff Gardner and her infant children L.A. and T.G. were transported to the 73rd Precinct, 1470 East New York Avenue, Brooklyn, New York.

20. While detained in a holding cell in the 73rd Precinct, plaintiff Gardner heard her infant son L.A. screaming and crying.

21. At approximately 12:00 a.m. on July 31, 2012, L.A. and T.G. were released to the custody of a relative.

22. Plaintiff Gardner was charged with Penal Law 220.03 criminal possession of a controlled substance in the seventh degree.

23. Plaintiff Gardner spent over twenty-four (24) hours in custody prior to her arraignment.

24. Plaintiff Gardner and her minor children T.G. and L.A. did not possess any controlled substance constructively or otherwise.

25. Subsequently, all charges against Plaintiff Gardner were adjourned in contemplation of dismissal and dismissed.

26. On or about July 30, 2012, at approximately 7:15 p.m., approximately ten (10) police officers entered 578 Thomas S. Boyland Street in Brooklyn, New York.

27. Plaintiff Sharon Hart was exiting her bathtub inside of 578 Thomas S. Boyland Street, Brooklyn, New York.

28. Shortly thereafter, Plaintiff Hart observed the defendants inside of her home.

29. The defendants dragged Sharon Hart out of her home and put her in police car

and transported her to the 73rd Precinct.

30. Plaintiff Hart was charged with Penal Law 220.03 criminal possession of a controlled substance in the seventh degree.

31. Plaintiff Hart did not possess any controlled substance constructively or otherwise.

32. Subsequently, all charges against Plaintiff Hart were adjourned in contemplation of dismissal and dismissed.

33. On or about July 30, 2012, at approximately 7:15 p.m., plaintiff Alexander Rhodes observed the defendants with automatic weapons and obscured faces enter 578 Thomas S. Boyland Street, Brooklyn, New York.

34. The defendants ordered to the ground, hit with a shield, and dragged down stairs plaintiff Rhodes.

35. The defendants put plaintiff Rhodes in a police car and transported him to the 73rd precinct.

36. Plaintiff Rhodes was charged with narcotics related offenses.

37. Plaintiff Rhodes was incarcerated for approximately two (2) weeks prior to posting bail.

38. Plaintiff Rhodes did not possess any controlled substance constructively or otherwise.

39. Subsequently, all charges against Plaintiff Rhodes were dismissed.

### FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations*
*On Behalf of all Plaintiffs for Unreasonable Seizure and False Arrest*
(Against the Individual Officer Defendants)

40. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the

preceding paragraphs with the same force and effect as if fully set forth herein.

41. As a result of the defendants' aforementioned conduct, the plaintiffs were subjected to illegal, improper, and false arrests by the Individual Officer Defendants. The plaintiffs were taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

42. Plaintiffs were conscious of their confinement.

43. As a result of the foregoing, plaintiffs' liberty was restricted in filthy and degrading conditions for an extended period of time, plaintiffs were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

44. By virtue of the foregoing, the defendants deprived the plaintiffs of their Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiffs under 42 U.S.C. §1983

**SECOND CAUSE OF ACTION**
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations
On Behalf of all Plaintiffs for the Failure to Intervene*
(Against the Individual Officer Defendants)

45. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

46. The defendants who were present but did not actively participate in the unlawful actions alleged herein and who observed and had an opportunity to prevent such conduct and failed to intervene.

47. By virtue of the foregoing, the defendants who failed to intervene deprived the plaintiffs of their Fourth Amendment rights under the United States Constitution to be free

from unreasonable searches of their person and are liable to plaintiffs under 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION
*42 U.S.C. § 1983- Fifth and Fourteenth Amendment Violations*
*On Behalf of Shameka Gardner, Sharon Hart, and Alexander Rhodes for Fabrication of Evidence*
(Against the Individual Officer Defendants)

48.     Plaintiffs Shameka Gardner, Sharon Hart, and Alexander Rhodes repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

49.     The Individual Officer Defendants created false evidence against plaintiffs Shameka Gardner, Sharon Hart, and Alexander Rhodes and drafted or signed sworn criminal complaints and false police reports.

50.     The Individual Officer Defendants forwarded to prosecutors fabricated and false evidence that was likely to influence a jury's decision.

51.     The Individual Officer Defendants knowingly and intentionally provided false evidence against plaintiffs Shameka Gardner, Sharon Hart, and Alexander Rhodes in legal proceedings.

52.     The Individual Officer Defendants knowingly and intentionally provided false evidence against Alexander Rhodes in grand jury testimony.

53.     By virtue of the foregoing, the Individual Officer Defendants deprived plaintiffs Shameka Gardner, Sharon Hart, and Alexander Rhodes of their Fifth and Fourteenth Amendment rights under the United States Constitution to due process and to a fair trial and are liable to plaintiffs under 42 U.S.C. §1983.

## FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations*
*On Behalf of all Plaintiffs for Unreasonable Seizure and Excessive Force*
(Against the Individual Officer Defendants)

54. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

55. While in the course of his official duties and acting under color of law, defendants intentionally used excessive physical force against plaintiffs, including but not limited to kicking and striking on the above-referenced plaintiffs.

56. The physical attack by the individual officer defendants on the above-referenced plaintiffs was objectively unreasonable.

57. The individual officer defendants' use of excessive physical force caused injuries to the on the above-referenced plaintiffs, including but not limited to, emotional distress, bruising, and pain.

58. By virtue of the foregoing, the defendant deprived the on the above-referenced plaintiffs of their Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiffs under 42 U.S.C. §1983.

## FIFTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

59. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

60. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New

York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more than $117 million.[1]  In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2]

61.     The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan  547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

62.     However, the City of New York has isolated NYPD officers like Police Officer Kamna, Police Officer John Doe #1, and Police Officer John Doe #2 from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the

---

[1]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on January 24, 2014.

[2]  "NYPD gives quite the payday; AP report reveals police have dolled out $1B to resolve lawsuits," by Associated Press Writers Colleen Long and Jennifer Peltz via Daily News wire Report, http://www.nydailynews.com/new-york/nypd-payday-ap-report-reveals-police-dolled-1b-resolve-lawsuits-article-1.189671, October 15, 2010 last visited on January 27, 2014.

NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[3] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

63. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

64. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiffs.

---

[3] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on January 27, 2014.

65. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

66. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

67. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect

racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

68. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

69. Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

70. As a result of the foregoing, Plaintiffs Shameka Gardner and her infant children, L.A. and T.G., Sharon Hart, and Alexander Rhodes are entitled to compensatory damages in an amount to be determined by a jury and are further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

    d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
      March 4, 2016

By: Steven E. Lynch
     /s/

Steven E. Lynch
Attorney for Plaintiffs
The Law Offices of Steven E. Lynch
233 Fifth Avenue, Suite 4A
New York, New York 10016
(T) (718) 858-8737
(F) (718) 690-3593
steven@stevenelynch.com